SANSING *v.* THOMAS.

In Banc. Feb. 14, 1949.

(38 So. (2d) 706)

In Banc. Mar. 14, 1949.

(39 So. (2d) 263)

J. Ed Franklin, C. F. Cowart, and Gordon & Gordon, for appellant.

James A. Torrey, Luther A. Whittington, for appellee.

**Roberds, J.**

Mrs. Thomas sued Sansing in the circuit court for $1600, alleged to be the actual value of 409 trees claimed by Mrs. Thomas to have been cut and removed by Sansing from some thirty-eight acres of land owned by her, and for the further sum of $6,135 statutory penalty for such cutting and removal, a total of $7,735.00. The jury found that Sansing had cut and removed from the land of Mrs. Thomas 230 trees of the actual value of $300, to which it added statutory penalty in the sum of $3,450, making a total verdict of $3,750. Judgment was entered accordingly, for which verdict and judgment Sansing appeals.

He assigns a number of grounds for reversal. We have concluded the case must be reversed because of the granting to plaintiff of the hereinafter quoted instruction. When that is done the assigned errors involving procedural matters will disappear and the other assigned errors may not arise on a new trial, or if they do arise, they will likely do so under evidence and circumstances different from those disclosed by the present record; therefore, except as to the competency of McCall as a witness, we pass upon no assigned error other than the granting of said instruction.

The instructions was given under those circumstances: Sansing had purchased timber from the lands of a Mrs. Thompson adjoining and lying immediately west of the

land of Mrs. Thomas. Uncertainty existed as to the actual location of the north and south line between the Thompson and Thomas lands and also as to the south boundary of the Thomas land. Sansing, by notice under the general issue, asserted that he, through his agent, inquired of Curtis Thomas, the husband of the appellee and her admitted agent, the location of these lines, and that Mr. Thomas informed Sansing's manager and cutters that the line between the Thompson and Thomas properties and the south line of the Thomas land ran along and was in accordance with an old fence, or the evidence thereof where the fence had been destroyed or removed, and that Thomas blazed some trees in spaces where the fence did not then exist, which blazed trees were supposedly in line with the existing parts of the fence, or evidence of prior existence thereof, north and south of such blazes; that Thomas informed the cutters that they could cut to this old fence and blazed line. Proof on behalf of appellant supported that plea. One witness said no trees were cut across this pointed-out line. Another said only two were cut east of that line, although evidence on behalf of appellee showed many more were cut over that line.

Some seven months after the timber was cut appellee caused a survey to be made in an effort to ascertain the true boundaries of her property. The surveyor testified to the correctness of his survey according to the metes and bounds description in the chain of title of appellee, and exhibited a plat of the survey. The old fence line was not straight. In some places it was west and in others east of the surveyed line. However, it is shown that many more trees were cut from the Thomas land acording to that survey than were cut therefrom according to the old fence, blazed line. In that situation the court granted to plaintiff this instruction:

"The Court instructs the Jury for the plaintiff, Maggie Thomas, that she is the owner under the facts in this case and the jury should so find, of all the land within the

survey shown by the evidence in this case lying West of the Thompson Lands and lying West of the line running south from the road 35.55 chains between the Thompson land and the land of plaintiff, and that she is entitled under the facts and law in this case to recover the actual value of the timber and trees shown by the preponderance of the evidence to have been cut from said lands of the plaintiff, and the court instructs the jury to return a verdict for such actual value as they may believe is shown by a preponderance of the evidence of all timber and trees cut and removed or destroyed from the lands of the plaintiff by the defendant, his agents and employees.''

There are two fatal objections to that instruction. The first is that it tells the jury Mrs. Thomas owns the land in the survey ''lying west'' of the Thompson land. She owned no land west of the Thompson land. The Thomas land was east of the Thompson land. This may be an error but nothing is said by either on that question. If it is an error, steps should have been taken to correct it. We cannot say whether it is an error or not. But if it be assumed that the word ''west'' should have been ''east'', the instruction yet works a reversal. It took away from the jury the right to find, if the evidence justified the finding, that the fence line had been recognized and considered the line by the adjoining property owners for sufficient time and under such conditions as to become the established line between the adjoining owners. It will be noted this instruction applies only to actual value of the trees. But it will also be noted the court told the jury that Mrs Thomas, as a fact, owned all of the land within the boundaries of the survey. In another instruction granted plaintiff, the jury was told that if it found, under the conditions set out in the instruction, that Sansing ''did go upon plaintiff's land'' and cut and remove trees therefrom, it should assess against Sansing the statutory penalty of $15.00 for each oak, pine and gum tree so cut and removed from such

land. In other words, these two instructions, taken together, told the jury (1) Mrs. Thomas owned all land within the calls of the survey, and (2) Sansing was liable for the statutory penalty for each oak, pine and gum tree cut from that land (if the other specified conditions existed), although such trees might have been located west of the fence line. Certainly if Mrs. Thomas informed Sansing the fence was the line and he could cut all trees west of that line Sansing would not have been liable for the statutory penalty for doing that even though some of the trees had been located east of the surveyed line and actually on the land of Mrs. Thomas according to the later survey.

We will only add, as a guide in another trial, that the testimony of McCall as to the manner and method of making his survey, as well as the survey itself and the plat thereof, constitute proper evidence to go to the jury.

Reversed and remanded.

### On Suggestion of Error.

**Montgomery, J.**

The Suggestion of Error, herein filed, is directed principally to that portion of our original opinion wherein we say, with reference to the instruction therein set out and held to be erroneous, "It took away from the jury the right to find, if the evidence justified the finding, that the fence line had been recognized and considered the line by the adjoining property owners for sufficient time and under such conditions as to become the established line between the adjoining owners." [38 So. (2d) 707]

The suit was for trespass and sought the recovery of the actual value and the statutory penalty for trees cut by appellant on the lands of appellee. For more convenient reference, we again set out the instruction which, in the

original opinion herein, we held to be erroneous and requiring a reversal of the case. It is as follows:

"The Court instructs the Jury for the plaintiff, Maggie Thomas, that she is the owner under the facts in this case and the jury should so find, of all the land within the survey shown by the evidence in this case lying West of the Thompson Lands and lying West of the line running south from the road 35.55 chains between the Thompson land and the land of plaintiff, and that she is entitled under the facts and law in this case to recover the actual value of the timber and trees shown by the preponderance of the evidenve to have been cut from said lands of the plaintiff, and the court instructs the jury to return a verdict for such actual value as they may believe is shown by a preponderance of the evidence of all timber and trees cut and removed or destroyed from the lands of the plaintiff by the defendant, his agents and employees."

As we pointed out in our former opinion, Curtis Thomas, the husband of the appellee and her admitted agent, informed Sansing's manager and cutters that the line of his wife's property ran along and was in accordance with an old fence, or the evidence thereof, where the fence had been destroyed or removed, and that Thomas blazed some trees in spaces where the fence did not then exist, and that Thomas informed the cutters that they could cut to this old fence and blazed line. Many of the trees, complained of, were cut west of this fence line, but east of the boundary line as run by the surveyor, some seven months later, which trees were within the survey and shown by it to be on the lands of appellee, but outside of the boundary of the lands, if the old fence and blazed line were the true boundary. In the latter event, the trees would be on the lands of Thompson and not on the lands of appellee.

If the jury should find, and they had the right to so find from the evidence in this record, that Thomas did point out the old fence line, as claimed, and did authorize

appellant and his agents to cut up to that line, then this would constitute a license to appellant and his agents to so cut up to said line, and would justify and excuse the appellant and exempt him from all liability for both actual damages and the statutory penalty for all acts done within the scope of the license, and for all trees cut before reaching the fence line, and this would be true even though the surveyed line were the true line and the trees cut between it and the old fence line were in truth and in fact on the lands of appellee.

██ The rule is appropriately stated in 53 C. J. S., Licenses § 84b, p. 811, as follows:

"A license excuses the licensee from liability to the licensor for acts done within the scope of the license, at a proper time and in a proper manner; but it does not justify acts exceeding the authority granted. ██ Until revoked, a license constitutes protection to the licensee as against the licensor, even though the act licensed is illegal. It justifies or excuses him, and exempts him from liability to the licensor for all acts done within the scope of the license prior to its revocation, including all acts which are necessarily incidental to the full enjoyment of the license . . . ."

American Jurisprudence, Vol. 33, p. 413, Sec. 109, announces this same rule as follows:

"An act which would otherwise be a trespass on real property may be justified on the ground of a license to use or enter upon such property, if at the time of such act the license is still unrevoked. Trespass will not, for example, lie where one goes on the land of another to remove buildings he has erected there or other movable property under a parol license from the owner, unless he has lost the right of removal."

This has been the rule in this State for almost one hundred years. In New Orleans, Jackson & Great Northern Ry. Company v. Moye, 39 Miss. 374, decided in 1860, one Alexander sued the New Orleans, Jackson and Great Northern Railroad Company for damages occasioned by

a trespass upon his premises by construction of their railroad across the same. The deposition of Reuben Davis was offered in evidence by the railroad company. He testified he was the agent of the company in procuring the right of way, and that a conversation with Alexander in reference to the right of way over his lot in which Alexander said: "I will not claim damages, and you need not have a jury assembled to assess the damages, but can go on with the completion of the road." No consideration was offered or paid for the right of way over Alexander's land. There was an objection to the introduction of the deposition "because the agreement testified to was not in writing." The Court held it was not necessary that the agreement be in writing; that it was a license or permission; did not depend on any consideration to support it; and constituted a defense to an action of trespass for doing that which the plaintiff had licensed and permitted to be done; and that it was error for the lower court to have excluded it.

In Hicks v. Mississippi Lumber Company, 95 Miss. 353, 48 So. 624, this Court held that a verbal license to enter upon land and cut such timber as may be needed for clearing a right of way is a complete defense to an action for the statutory penalty for the cutting of the trees, and is also a complete defense to a suit for the value of the trees cut.

Getting back now to the instruction under consideration, it will be observed that it peremptorily told the jury that they should return a verdict for appellee for the actual value of the timber and trees cut from the lands of the plaintiff, east of the surveyed line, even though they might have been cut west of the line pointed out by Thomas. This is not the law. ▮▮▮ Appellant's license, if such were found by the jury to exist, would be a defense to any action for trespass by the cutting of trees between the newly surveyed line and the fence, and if the jury believed from the evidence that Thomas had pointed out the line and said that appellant and his

agents could cut up to it, as alleged and proven by witnesses for the defendant, then this would be a defense and there could be no recovery of either the actual value or the statutory penalty for the trees cut between the two said lines. ■■■ The instruction, in its present form, excludes from the jury the consideration of the license, if any, granted by Thomas to appellant and, without authority of law, deprives appellant of the consideration by the jury of this meritorious defense to all claims for either actual value or statutory penalty on account of trees that may have been cut between said lines. The Suggestion of Error will therefore be overruled.

Suggestion of error overruled.